ANGELINA KOCH DOWNS, PROSECUTRIX, v. BOARD OF EDUCATION OF THE DISTRICT OF HOBOKEN AND STATE BOARD OF EDUCATION, DEFENDANTS.

RAI DRIESEN FLECHTNER, PROSECUTRIX, v. BOARD OF EDUCATION OF THE DISTRICT OF HOBOKEN AND STATE BOARD OF EDUCATION, DEFENDANTS.

BOARD OF EDUCATION OF THE DISTRICT OF HOBOKEN, PROSECUTOR, v. ANGELINA KOCH DOWNS AND THE STATE BOARD OF EDUCATION, DEFENDANTS.

BOARD OF EDUCATION OF THE DISTRICT OF HOBOKEN, PROSECUTOR, v. RAI DREISEN FLECHTNER AND THE STATE BOARD OF EDUCATION, DEFENDANTS.

Argued October 3, 1933—Decided March 23, 1934.

Before BROGAN, CHIEF JUSTICE, and Justices TRENCHARD and HEHER.

For Angelina Koch Downs and Rai Driesen Flechtner, *Arthur T. Vanderbilt (Nathan L. Jacobs, on the brief)*.

For the board of education of Hoboken, *Joseph Greenberg*.

PER CURIAM.

These writs taken together bring up for review the action of the state board of education in affirming the dismissal by the school board of Hoboken of certain school teachers, the action of the state board in ordering payment of certain unpaid salary to them, and the action of the state board in ordering the school board of Hoboken to dismiss certain non-tenure teachers and to replace them with tenure teachers.

It appears that there were nine elementary schools in the school district of Hoboken with six thousand seven hundred and four pupils in attendance in 1928. From that time forward until 1932 there was a marked decrease in attendance from year to year so that in 1932 there were only five thousand four hundred and thirty-one pupils. During the latter part of this period there were five vacant classrooms and nine hundred and forty-three vacant seats. This diminution in the number of pupils was a natural one, due to the loss of population. During this period the decrease in the number of teachers was only nine. In 1931 due to a bank failure, inability to collect taxes and other causes, the city of Hoboken, which comprises the school district of Hoboken, found it difficult to finance its schools, difficult at first and almost if not impossible thereafter to borrow money by the use of all available credit of the city. From time to time the president of the board of education made public reference to economic problems facing the board. He referred to the fact that many of the teachers were married women, some of whom did not live in the city, and that condition he vigorously criticised. On June 27th, 1932, a second conference was held between the bankers and the city officials in an effort to raise money, but

that effort was futile in view of the position taken by the bankers that the cost of operating the schools must be reduced. As a result of this conference the city commissioners met with the board of education and laid before them the situation. The result was that it was decided to close two schools. To carry out this decision the board met on June 29th, 1932. At that meeting a report was made by the superintendent of schools that he had made certain transfers of teachers and other employes from and to various schools, subject to the approval of the board. That approval was unanimously given. By that transfer twenty-six teachers represented by the prosecutrix Angelina Koch Downs were transferred to schools Nos. 4 and 7. Later at the same meeting the board by resolution reciting in effect the decreased attendance, the excessive per capita cost of pupils, the necessity of economizing, and that the services of so large a number of teachers were no longer required, unanimously resolved that schools Nos. 4 and 7 be closed on June 30th at the close of the school session, and that the pupils theretofore attending those schools be transferred to other schools, and that thirty-four named teachers (including the twenty-six heretofore referred to and eight others represented by prosecutrix Rai Driesen Flechtner) be dismissed as of June 30th, 1932, and abolished the offices of certain other employes.

All of the dismissed teachers here involved (namely, the twenty-six transferred to schools Nos. 4 and 7, and the eight who had long served in Nos. 4 and 7) have served for more than three years, and are therefore under the protection of the Tenure of Office act.

An appeal was taken by the named teachers to the commissioner of education. That official concluded that the transfer of the twenty-six teachers from various schools to Nos. 4 and 7 was illegal in that it had for its purpose the placing them in a situation which would appear to legalize the termination of their services. As to the eight teachers who had served in schools Nos. 4 and 7 prior to June 29th, 1932, the commissioner held that their services were legally terminated.

An appeal was then taken to the state board of education and that board held that the termination of the services of the thirty-four teachers was legal, subject to the board assigning seven of the teachers to positions held by teachers not protected by tenure, and that the teachers who had not been paid the balance of their salaries for the school year were entitled to such payment; in other words, the decision of the commissioner, so far as it related to the reinstatement of the twenty-six teachers, was reversed, and the termination of the services of the eight teachers and the payment of the balance of salary for the year of all the teachers, was affirmed.

We think that the decision of the state board of education should not be disturbed.

The powers of boards of education in the management and control of the school districts are broad. They are invested with the supervision, control and management of the public schools. They may make, amend and repeal rules, regulations, and by-laws not inconsistent with the school law or with the rules and regulations of the state board of education, and, among other things, may employ and discharge teachers. By section 68 of the School law (*Comp. Stat., p.* 4744) they are authorized by a majority vote of the whole number of its members to appoint, transfer or dismiss teachers. These powers are limited as to the employment and discharge of teachers only to the extent provided by the Teachers' Tenure law. *Pamph. L.* 1909, *ch.* 243. And it will be noticed that that act declares, among other things, that "nothing herein contained shall be held to limit the right of any school board to reduce the number of principals or teachers employed in any school district when such reduction shall be due to a natural diminution of the number of pupils in said school district."

In general the right to transfer a teacher seems to rest, therefore, in the sound discretion of the board of education, and it seems to us that the mere fact that the twenty-six teachers were transferred from their various schools to schools Nos. 4 and 7, which at the same meeting the board of education determined to close, did not render the transfers

illegal. In general the board had a right to dispense with the services of such number of teachers selected from the entire school district as it in good faith deemed necessary to effect the economy which its financial condition demanded, and whose services were no longer necessary because of the diminution of the number of pupils.

It is further contended that what was done was in abuse of the powers and discretion of the board of education and was a gross discrimination, and this contention seems to rest upon the fact that the teachers dismissed were either married women or non-resident women, or both, and much is made of the expressed feelings of the president of the board with respect to this situation.

It is true that he expressed himself forcibly. It is true that he wrote letters to the teachers in which he expressed his views. It is also true that he made a survey and reported the result of his survey to the board. But it is also true that the board did not authorize such survey and took no action on such report with regard to non-resident and married women teachers, and that it did not authorize the president to communicate with the teachers nor to do anything in that regard. The board may or may not have been influenced by his views. Upon that we will not speculate. The question is does this action of the president affect the legality of the transfers. We think not. We are satisfied from this record that the purpose of the board was to effect economy and to terminate the services of a number of teachers no longer necessary because of the diminution of pupils, and we cannot say, even though they dismissed married or non-resident women teachers, giving preference in continued employment to residents of the school district and to those who would normally be dependent upon themselves for livelihood, that such action was an abuse of discretion or evidence of bad faith. The board appears to us to have acted within the authority conferred upon it by law, and its action involved the exercise of discretion, and in the absence of clear abuse, its action ought not to be disturbed; so we conclude that the transfer of the twenty-six teachers to schools Nos. 4 and 7 was lawful and

that the board was justified in dismissing the teachers as it did, subject to the reservation imposed by the state board.

It appears, however, that at the time of the termination of the teachers' services there were in the employ of the school board seven teachers who had not acquired tenure. Now, in the recent case of *Seidel* v. *Board of Education of Ventnor City,* 110 *N. J. L.* 31; 164 *Atl. Rep.* 901, it was held that "granting that apart from the statute, a school board may, in the interest of economy, reduce the number of teachers, the protection afforded by the statute (Teachers' Tenure act, *Pamph. L.* 1909, *ch.* 243) would be little more than a gesture if such board would be held entitled to make that reduction by selecting for discharge teachers exempt by law therefrom, and retaining the non-exempt. If such reduction is to be made at all, and a place remains which the exempt teacher is qualified to fill, such teacher is entitled to that place as against the retention of a teacher not protected by the statute."

That decision seems to apply to this case and to justify the action of the state board of education in requiring the Hoboken board to assign seven of such discharged teachers to the positions held by teachers not protected by tenure.

The remaining question relates to the claim by the teachers that they are entitled to the balance of their salary for the year 1931-32. Both the commissioner of education and the state board of education concurred in the view that all of the teachers who had not received full salary since September 1st, 1931, were entitled to the balance, less deductions due to the teachers' pension and annuity fund.

We think that was right. The teachers were under contract for a year's services and those services ran from September 1st to the following June 30th. They had performed their work and we see no reason why they are not entitled to their compensation.

The result is that the judgment of the state board will be affirmed. No costs will be allowed any party hereto as against any other party.