Rafael A. González, Petitioner and Appellant, *v.* José M. Gallardo, Commissioner of Education of Puerto Rico, Respondent and Appellee.

No. 8681. Argued May 25, 1943.—Decided June 22, 1943.

*Virgilio Brunet and José L. Novas* for appelant. *M. Rodríguez Ramos, Acting Attorney General,* and *A. E. Franco Cabrero* and *C. Santana Becerra, Deputy Attorneys General,* for appellee.

Mr. Justice Snyder delivered the opinion of the court.

Does the Commissioner of Education have unlimited power to transfer a permanent teacher from the municipality in which he is teaching. to a similar position in another municipality? The answer to this queston is of utmost importance to the educational system of Puerto Rico. It is raised squarely by the petition herein of Rafael A. González for a writ of mandamus against the Commissioner of Education.

González alleged that he has been a public school teacher at Lares for ten years; that when Act No. 312, Laws of Puerto Rico, 1938 (p. 553), was approved, the defendant herein, as Commissioner of Education, tendered him a permanent appointment as Assistant Superintendent of the public schools of Lares, at a salary of $125 monthly; that he filled the said post until August 10, 1942; that on July 28, 1942, the defendant wrote him a letter, set forth in the margin,[1]

---

[1] "July 28, 1942
Mr. Rafael A. González
Assistant Superintendent
Lares, Puerto Rico

(Through the office of the Superintendent of Schools)

Dear Mr. González:

Your assignment as permanent Assistant Superintendent, at a salary of $125.00 per calendar month, has been changed from Lares to Aguada–Moca,

transferring him from Lares to the Aguada–Moca district; that pursuant to §§1 and 2 of Act No. 312, Laws of Puerto Rico, 1938,[2] he is entitled to the post of Assistant Superintendent of Schools at Lares on a permanent basis; and that the defendant has refused to reinstate him in the said position, without any legal excuse therefor.

The defendant demurred to the petition on the ground that it did not state facts sufficient to constitute a cause of action. The defendant also filed an answer, admitting the facts, but alleging that he was empowered to make the transfer in ques-

---

effective August 10, 1942. Please report to the district Superintendent of Schools at Aguada on time to start work on that date.

Please acknowledge receipt of this letter.

Yours very truly,

(Sgd.) José M. Gallardo
Comissioner of Education.''

([2]) Section 1 of Act No. 312 of 1938, provides that:

''Every public-school teacher in active service through an appointment made in accordance with the school law and the regulations of the Department of Education, who shall have practised as such in a school of any category during the probation period hereinafter specified, except special teachers, shall be entitled to be contracted as a permanent teacher in the category in which he may be practising his profession at the expiration of the said probation period, without any further proof of classification or professional ability than the holding of a life license which shall be issued at the termination of the probation period to such teacher as, in the judgment of the Department of Education, shall have shown sufficient professional ability; *Provided,* That for the purposes of this Act, no consideration shall be given to the time such teachers may have been practising as substitutes or by virtue of provisional licenses; *And provided, further, That such teachers shall be entitled to be contracted as permanent teachers in the municipality where they may be teaching at the expiration of the probation period.''* (Italics ours.)

Section 2 of the said Act reads as follows:

''Teachers of all categories, except special teachers, shall be classified by the Department of Education as probation teachers during the first two (2) years of continuous practice. Those teachers who on July 1, 1938, shall have completed two or more years of continuous practice shall be considered as having completed their probation period. Any practising public-school teacher, except special teachers, shall be entitled to be contracted as a permanent teacher after said date if, in the opinion of the Department of Education, it is evident that said teacher has satisfactorily completed his probation period.''

tion in the manner indicated by virtue of §4 of Act No. 312 [3] and of §17 of the Organic Act.[4]

The district court sustained the demurrer and, finding that the petition was not susceptible of amendment, entered judgment dismissing the petition. González has appealed from that judgment.

█ The demurrer admits, as a question of fact, that González was a permanent teacher coming within the protection of Act No. 312. No extended discussion is necessary as to the meaning of the clause found in §1 of Act No. 312 that "such teachers shall be entitled to be contracted as permanent teachers in the municipality where they may be teaching at the expiration of the probation period": The Attorney General, representing the Commissioner, concedes that this language is unambiguous, and that it provides, as a part of the permanency of tenure for a teacher, for employment in the municipality where the permanent status was attained, subject, of course, to suspension or removal for the reasons and in the manner set forth in §5 of Act No. 312. In *Dutart v. Woodward*, 279 Pac. 493, 4 (Cal., 1929), the court in interpreting a similar statute, said that "The Legislature has conferred upon teachers, under specified circumstances, a vested right to be so classified and to teach as permanent instructors, *in the particular district where this right has been secured,* subject to such reasonable rules as may be adopted, which are not in conflict with law". (Italics ours). To the same effect, *Abraham v. Sims*, 42 P. (2d) 1029 (Cal.,

---

[3] Section 4 of Act No. 312 reads as follows:

"Resignations, leaves without pay, transfers, and promotions of permanent teachers shall be governed by the regulations promulgated for the purpose by the Commissioner of Education."

[4] Section 17 of the Organic Act (48 U.S.C. §783) provided that:

"The commissioner of education shall superintend public instruction throughout Porto Rico; all proposed disbursements on account thereof must be approved by him, and all courses of study shall be prepared by him, subject to disapproval by the governor if he desires to act. He shall prepare rules governing the selection of teachers, and appointments of teachers by local school boards shall be subject to his approval, and he shall perform such other duties, not inconsistent with this section, as may be prescribed by law."

1935); *Kacsur* v. *Board of Trustees, etc.,* 116 P. (2d) 593 (Cal., 1941).

The Attorney General nevertheless argues that the Commissioner was empowered to make the transfer herein under §1 of the Rules and Regulations Governing the Transfer of Teachers, promulgated by the Commissioner on July 1, 1942.[5]

Before examining that question, we deem it desirable to dispose of two preliminary problems. A previous regulation, dated December 22, 1941, cited by the petitioner, provided a method whereby a teacher in one municipality could, with the approval of the Commissioner, exchange posts with a teacher in another municipality. We need not decide in this case whether that previous regulation exercised to the limit the power conferred on the Commissioner by §4 of Act No. 312 to promulgate regulations for transfer of teachers. Consequently, we expressly leave open the vital question of whether the Commissioner may under §4 provide in the future regulations for transfer because schools are closed or because courses are curtailed due to shifts in population, or for similar reasons. If the Commissioner should issue detailed regulations covering specific types of situations, we should then be called on to determine if such regulations were violative in a particular case of the vested right of a teacher by virtue of a contract of employment under §§1 and 2 of Act No. 312 (See *State* v. *Board of Education of City of Duluth,* 7 N. W. (2d) 544, 57 (Minn., 1942); *Miller* v. *Stoudnour,* 26 A. (2d) 113 (Pa., 1942); *State* v. *Meigs County Board of Education,* 44 N. E. (2d) 455 (Ohio, 1942); *Downs* v. *Board of Education*

(5) Section 1 thereof reads as follows:

"Any teacher employed in the public schools in a position of a permanent, probationary, or any other nature, whatever his category or rank, may be transferred from the school in which he may be discharging his duties or from the municipality in which he may be exercising his office to a position of equal category in any other school or municipality in which his services may be considered more necessary and more conducive to the good of the school system, or when, for any other reason, the needs of the system demand such transfer."

*of Hoboken Dist.,* 171 Atl. 528 (N. J., 1934)). We leave such problems for the future.

Nor are we impressed with the argument of the Attorney General, which was not adopted by the district court, that the demurrer herein was properly sustained because the petition does not in terms label the action of the Commissioner as arbitrary. González had a *prima facie* right, under the allegations of his petition and by virtue of §§1 and 2 of Act No. 312, to a permanent post at Lares. His petition sets forth verbatim a letter from the Commissioner which, without giving any reason therefor, summarily transfers him to another municipality. We hold that setting up such facts in the petition under the circumstances of this case sufficiently states a cause of action herein, requiring the Commissioner to answer by way of denial or affirmative defense, and on demurrer, requiring us to determine whether as a matter of law the Commissioner's right to make such a transfer is absolute.

We therefore turn to the acute question confronting us in this case; namely, whether the Commissioner has unlimited power to transfer permanent teachers from one municipality to another. Section 1 of the Regulations of July 1, 1942 undoubtedly purports to give the Commissioner such power. The petitioner therefore asserts that the said regulation must fall, as it violates the vested right he has acquired under §§1 and 2 of Act No. 312 to teach permanently at Lares. The Attorney General obviously does not contend that a regulation issued to implement a statute may contain provisions conflicting with the terms of the statute itself. Nevertheless, the Attorney General insists that the regulation giving the Commissioner unfettered discretion to transfer a teacher from one municipality to another can be reconciled with the vested right acquired by a teacher under Act No. 312 to teach permanently in a particular municipality. We repeat that the question of providing by suitable regulation for the transfer of a teacher for certain specified reasons is

not involved in this case. But we are unable to follow the argument of the Attorney General that to provide by regulation under Act No. 312 that the Commissioner of Education may *without giving any reasons therefor* transfer a teacher does not impair the vested right of the incumbent, conferred by Act No. 312, to teach permanently in that municipality. If we look solely to §4 of Act No. 312 for authority to promulgate this regulation, we must conclude that it is invalid for that purpose because of its obvious conflict with the aforesaid vested right.

The district court apparently agreed with our conclusion in this respect. It did not uphold the regulation as proper under §4 and as consistent with §§1 and 2 of Act No. 312. It dismissed the petition on a wholly different theory. The lower court held that the unlimited power of selection vested in the Commissioner by virtue of §17 of the Organic Act subsumes the power of transfer, and that inasmuch as Act No. 312 purports to restrict this right of selection, which includes the power of transfer, Act No. 312 is null and void. The district court, in short, concluded that the regulation was merely a restatement of the allegedly uncontrolled authority of the Commissioner, stemming from §17 of the Organic Act, to make arbitrary transfers, and that the regulation neither added to or substracted from that authority. To affirm the judgment of the district court on such a sweeping basis would indeed have widespread repercussions on the educational system of Puerto Rico and the tenure of teachers after their selection and appointment to permanent positions.

In coming to this conclusion, the district court relied partly on three cases of this court. But those cases all arose before Act No. 312 was passed, and none of them involved the question of transfer. In *Urdaz* v. *Padín, Commissioner*, 48 P.R.R. 297, the approval by the Commissioner of the appointment of a teacher by a school director was involved. The case was clearly covered by the provision in §17 of the Organic Act that the Commissioner "shall prepare rules gov-

erning the selection of teachers, and appointments of teachers by local school boards shall be subject to his approval. . .".. *Martínez* v. *Huyke*, 41 P.R.R. 287, was a similar case, except that approval by the Commissioner of an appointment made by a school board was involved. *Rodríguez* v. *García et al.*, 35 P.R.R. 350, involved a proposed disbursement for public instruction. Section 17 of the Organic Act specifically provides that "all proposed disbursements . . . must be approved" by the Commissioner. The opinions in these three cases are brief, and come to conclusions and use language about which there can be no legitimate dispute.

But we do not agree with the district court that those cases and §17 of the Organic Act require us to hold that the subsequently enacted Act No. 312 is void. The latter Act in no way encroaches on the function of the Commissioner laid down in the Organic Act that "The commissioner of education . . . shall prepare rules governing the selection of teachers, and appointments of teachers by local school boards shall be subject to his approval. . . ." The Commissioner does not make that contention here, nor did he think so at the time the statute in question was approved. Indeed, his Annual Report of 1937–38 states at p. 13 that "Several acts sponsored by the Department of Education were approved by the Legislature of 1938, to become effective during the year 1938–39. They are: . . . 4. Act No. 312—1938 which empowers the Commissioner of Education to extend permanent appointments to all public school teachers who have served a satisfactory probationary period as specified by the law. (This law is not applicable to special teachers.) . . .".

Act No. 312 carefully preserves in the Commissioner the power of ultimate selection which is vested in him by the Organic Act. Section 1, after providing for probationary teachers, reads that "a life license . . . shall be issued at the termination of the probation period to such teacher as, in the judgment of the Department of Education, shall have shown sufficient professional ability. . .". Section 2 has a

similar provision for teachers who had already taught for a sufficient probationary period when the Act was passed. It provides that such a teacher "shall be entitled to be contracted as a permanent teacher . . . if, in the opinion of the Department of Education, it is evident that said teacher has satisfactorily completed his probation period."

This Act, in brief, sponsored by the Commissioner himself, furnishes the Commissioner with the machinery which enables him to put a prospective teacher through a probationary period of trial and error before exercising his judgment of final selection for permanent appointment which is vested exclusively in him under the Organic Act. Act No. 312 is modeled on Teachers' Tenure Acts found in the overwhelming majority of the States. It is designed to put selection of school teachers on a scientific, impartial basis, and to attract personnel of high caliber by assuring them permanency of tenure. Its provisions relieve the appointing power of pressure, political or otherwise, in favor of particular candidates. But final selection, as provided in the Organic Act, always remains in the hands of the Commissioner of Education.

In view of the arguments made by the parties herein, we note that the provisions of §17 of the Organic Act that the Commisioner "shall superintend public instruction" does not vest in him any specific powers which he would not otherwise possess. The power and right to superintend public instruction, even without the above-noted declaratory and directory clause, is inherent in the post of Commissioner of Education. But broad executive power of that nature does not completely tie the hands of the Legislature. As indicated in the brief of the petitioner, there are a number of States which, like Puerto Rico, have passed Teachers' Tenure Acts providing for permanency of tenure in spite of constitutional provision for a Commissioner who shall superintend public instruction. Corwin disposes of a similar contention with reference to a chief executive, as follows: "A leading, and oft-cited case, is

*Field* v. *People*, 2 Scam 79 (Ill. 1839). Alluding to the duty of the governor to 'see that the laws are faithfully executed,' the court says in this case (p. 91): 'This clause of the Constitution, like those dividing the powers of government, and declaring the attributes of each, is the declaration of a general principle, which is "not to be regarded as a rule to fetter and control, but as matter merely declaratory and directory." It confers no specific powers "nor does it enjoin any specific duty." "This power of general supervision," says an able commentator on American law, "is a duty enjoined on the federal and state executives". "It would be dangerous, however, to treat this clause as conferring any specific power which they would not otherwise possess. It is to be regarded as a comprehensive description of the duty of the executive to watch with vigilance over all the public interests," ' citing Walker, Introduction to American Law, 103." (Footnote, Corwin's Tenure of Office and the Removal Power under the Constitution, 27 Col. L. Rev. 353, 389). Cf. *Jiménez* v. *Reily*, 30 P.R.R. 582, 585, 655; *González* v. *District Court*, decided June 2, 1943, *ante* p.—.

Indeed, Congress was aware that if it wished specific powers to be vested in the Commissioner which would not be subject to modification by the insular legislature, detailed provision therefor must be made in the Organic Act. As we have been, this was done in §17 of the Organic Act, as to selection of teachers and as to disbursements.

The district court did not err on this point. It found no power in the Commissioner to make an arbitrary transfer within the generic clause directing the Commissioner to superintend public instruction throughout Puerto Rico. But the lower court did conclude that Act No. 312 was in conflict with the specific provision of §17 of the Organic Act that the Commissioner "shall prepare rules governing the selection of teachers, and appointments of teachers . . . shall be subject to his approval. . .". However, as already noted, we are unable to agree with that conclusion. As pointed out

by the petitioner in his brief, "... the permanency statute never interferes with the power to select or to appoint. The Commissioner promulgates rules for the selection of teachers. He appoints them. He tests them. He judges their work. He determines whether or not those teachers thus selected, appointed and judged, render satisfactory services. Up to that point, the Permanency Act does not interfere. It is after all these things have occurred and the Commissioner comes to the conclusion that such teachers have been successful in their two-year probation period, that the Permanency Act begins to function, not to interfere with the authority of the Commissioner, but to guarantee to the people the services of competent teachers and to prevent their arbitrary elimination by way of transfers or other means."

Taking as a premise, which all concede to be true, that selection of teachers is vested in the Commissioner, the district court finds (1) that Act No. 312 interferes with the Commissioner's power of selection and (2) that "transfer of a teacher is nothing more than his selection for a particular district." We have already indicated our view that the district court's first proposition is not sustained by the terms of Act No. 312, under which the Commisioner still retains his power of selection.

 Turning to the lower court's second proposition, we are unable to follow its reasoning that transfer is part of a system of selection. To push that argument to its logical conclusion, a reduction in grade or salary, or even removal, would also come under selection. Transfer, we conclude, is more appropriately classified under tenure. And when we examine the problem of tenure we discover the highly significant fact that when the Organic Act was originally proposed it provided that "the election, appointment and *tenure* of teachers shall be determined by" the Commissioner of Education. (Italics ours). At the insistence of Resident Commissioner Muñoz Rivera, the provision for determination of tenure by the Commissioner of Education was elimi-

nated from the bill when finally enacted.[6] Congress felt it wise to provide for selection of teachers by the Commissioner in order to keep this vital function out of politics. Congress deliberately struck from the first draft of the Organic Act a similar provision giving the Commissioner control over tenure of teachers. Fortunately, the Legislature, at the recommendation of the Commissioner himself, set up in §1 of Act No. 312 safeguards against arbitrary transfers. The Legislature thus relieved the Commissioner with reference to transfers of the same political pressure which Congress sought to eliminate as to original selection of teachers. A useful analogy is found in §5 of Act No. 312 providing for suspension or removal of permanent teachers "only for just cause, according to . . . the procedure prescribed by, the Compiled School Law. . .". No one contends that the power of selection of teachers, as vested in the Commissioner by the Organic Act, overrides this provision of law, enabling the Commissioner to remove or suspend a permanent teacher without cause (see *Rosario* v. *Gallardo,* Commissioner, decided June 22, 1943, *ante,* p. 255). There is no more reason to conclude that the power of selection permits the Commissioner arbitrarily to divest a permanent teacher of an important feature of his tenure under Act No. 312—the right to continue teaching in a particular municipality.

The question herein therefore reduces itself to the following chain of reasoning. Congress has chosen not to give the Commissioner of Education specific powers relating to tenure of teachers, and no such power flows from the general power to superintend public instruction; transfer relates to tenure and not, as the district court found, to selection of a teacher; permanency of tenure includes, under §§1 and 2 of Act No. 312 and the cases elsewhere interpreting similar statutes, a position in a particular municipality; in so providing for

---

(6) Hearings before the Committee on Pacific Islands and Porto Rico, United States Senate, Sixty-Fourth Congress, First Session, on S. 1217, a Bill to Provide a Civil Government for Porto Rico, and for other purposes (p. 78).

permanency of tenure of a teacher in a particular munici-
pality, §§1 and 2 of Act No. 312 are valid and do not impinge
on the powers vested in the Commissioner by §17 of the
Organic Act.

Act No. 312 is not indigenous to Puerto Rico. It follows
a pattern which has gradually spread throughout the United
States. "The Teacher Tenure Act was designed to accom-
plish a laudable purpose. If sanely and impartially admin-
istered, the beneficent results to inevitably follow will vin-
dicate the persistent efforts of its champions in procuring its
adoption. It was intended, *inter alia,* to protect the worthy
instructors of the youth of a parish from enforced yielding
to the political preferences of those theretofore having the
power to grant or withhold employment to them; and to
vouchsafe to such teachers employment, after a long term
of satisfactory service to the public, regardless of the vicis-
situdes of politics or the likes or dislikes of those charged
with the administration of school affairs." (*Andrews* v.
*Union Parish School Board,* 184 So. 574, 578 (La. 1938)).
It has been repeatedly held that Teachers' Tenure Acts were
approved, among other things, to protect teachers, and hence
that such an Act "must always be liberally construed in favor
of those it is enacted to protect". (*Kennington et al.* v. *Red
River School Board,* 200 So. 514, 16 (La., 1940). For an
excellent opinion giving the background of the development
of such a statute and its purposes, see *McSherry* v. *City of
St. Paul,* 277 N. W. 541 (Minn., 1938). See also, 127 A.L.R.
1298; 103 A.L.R. 1382.

Having concluded that under §1 of Act No. 312 perma-
nency of tenure in a particular municipality is one of the
emoluments of tenure, we find that under his contract of em-
ployment the petitioner has a vested right to teach perma-
nently at Lares which cannot be arbitrarily terminated. (*In-
diana ex rel. Anderson* v. *Brand,* 303 U. S 95; cf. *Rivera* v.
*Tugwell, Governor,* 59 P.R.R. 834).

Although the judgment herein was entered on a ruling by the district court sustaining the demurrer to the petition for mandamus, the parties are in agreement as to the facts. The case being controlled by our decision on the only question of law involved, it would serve no useful purpose for us to remand the case for trial on an answer in which all the facts alleged in the petition have been admitted. The judgment of the district court sustaining the demurrer to the petition for mandamus will therefore be vacated, and a new judgment entered granting the same.

Mr. Chief Justice Del Toro did not participate herein.