Rafael A. González, demandante y apelante, *v.* Hon. José M. Gallardo, Comisionado de Instrucción de Puerto Rico, demandado y apelado.

Núm. 8681.—*Sometido:* Mayo 25, 1943. *Resuelto:* Junio 22, 1943.

*Virgilio Brunet* y *José L. Novas,* abogados del apelante; *Hon. Procu-rador General Interino M. Rodríguez Ramos* y *A. E. Franco Ca-brero* y *C. Santana Becerra, Procuradores Auxiliares,* abogados del apelado.

El Juez Asociado Señor Snyder emitió la opinión del tribunal.

¿Tiene el Comisionado de Instrucción poder ilimitado para trasladar a un maestro permanente del municipio en que trabaja a una plaza similar en otro municipio? La contestación a esta pregunta es de suma importancia para el sistema educativo de Puerto Rico. La petición radicada en este caso por Rafael A. González solicitando un auto de *mandamus* contra el Comisionado de Instrucción, levanta exactamente este punto.

González alegó que ha sido un maestro de instrucción pública en Lares durante diez años; que al aprobarse la Ley núm. 312, Leyes de Puerto Rico, 1938 (pág. 574), el aquí demandado, como Comisionado de Instrucción, le extendió un nombramiento permanente como Superintendente Auxiliar de las escuelas públicas de Lares, con sueldo mensual de $125; que desempeñó dicha plaza hasta el 10 de agosto de 1942;

que el 28 de julio de 1942 el demandado le escribió una carta, copiada al margen,(¹) trasladándolo del distrito de Lares, al de Aguada–Moca; que de conformidad con las secciones 1 y 2 de la Ley núm. 312, Leyes de Puerto Rico, 1938,(²) el peticionario tiene derecho permanentemente a la plaza de Supe-

(¹)                  "July 28, 1942.
Mr. Rafael A. González,
Assistant Superintendent,
Lares, Puerto Rico.

(Through the office of the
Superintendent of Schools)

Dear Mr. González:

Your assignment as permanent Assistant Superintendent, at a salary of $125.00 per calendar month, has been changed from Lares to Aguada-Moca, effective August 10, 1942. Please report to the district Superintendent of Schools at Aguada on time to start work on that date.

Please acknowledge receipt of this letter.

Yours very truly,

(Sgd.) José M. Gallardo,
Commissioner of Education"

(²)La sección 1 de la Ley núm. 312 de 1938, dispone que:

"Todo maestro en servicio activo en las escuelas públicas, mediante nombramiento hecho de conformidad con la Ley Escolar y los reglamentos del Departamento de Instrucción, y que haya ejercido como tal en cualquier categoría de escuelas durante el período probatorio que se especifica más adelante, a excepción de los maestros especiales, tendrá derecho a ser contratado con carácter permanente en la categoría correspondiente en que esté ejerciendo al expirar dicho período probatorio, sin otras pruebas de clasificación o capacidad profesional que la posesión de una licencia vitalicia que se expedirá al término del período probatorio a los maestros que a juicio del Departamento de Instrucción hayan demostrado suficiente capacidad profesional; *Disponiéndose,* que para los efectos de esta Ley no se tomará en consideración el tiempo que los maestros ejerzan en calidad de substitutos o a virtud de licencias provisionales; *Y disponiéndose, además, que tales maestros tendrán derecho a ser contratados con carácter permanente en el municipio en que estén ejerciendo al expirar el período probatorio.* (Bastardillas nuestras.)

"La sección 2 de dicha ley lee como sigue:

"Los maestros de todas las categorías, a excepción de los maestros especiales, serán clasificados por el Departamento de Instrucción como maestros probatorios durante los primeros dos (2) años de ejercicio consecutivo. Aquellos maestros que para el 1 de julio de 1938 hayan completado dos o más años de ejercicio consecutivo se considerarán que han completado su período de prueba. Cualquier maestro en ejercicio en las escuelas públicas, a excepción de los maestros especiales, tendrá derecho a contrato permanente después de esa fecha, si a juicio del Departamento de Instrucción fuere evidente que dicho maestro ha completado satisfactoriamente su período probatorio."

rintendente Auxiliar de Escuelas en Lares; y que el demandado se ha negado a reponerlo en la referida plaza, sin excusa legal para ello.

El demandado interpuso excepción previa contra la petición por el fundamento de que no aducía hechos suficientes constitutivos de causa de acción. También radicó una contestación, admitiendo los hechos, pero alegando que tenía poder para hacer dicho traslado en la forma indicada, de conformidad con la sección 4 de la Ley núm. 312([3]) y con el artículo 17 del Acta Orgánica.([4])

La corte de distrito declaró con lugar la excepción previa, y resolviendo que la petición no era susceptible de enmienda, dictó sentencia desestimando la petición. González ha apelado de tal sentencia.

La excepción previa admite, como cuestión de hecho, que González era un maestro permanente protegido por la Ley núm. 312. Es innecesaria cualquier discusión prolongada en cuanto al significado de la cláusula que se encuentra en la sección 1 de la Ley núm. 312 al efecto de que "tales maestros tendrán derecho a ser contratados con carácter permanente en el municipio en que estén ejerciendo al expirar el período probatorio". El Procurador General, que representa al Comisionado, admite que este lenguaje no es ambiguo, y que dispone, como parte del derecho de permanencia del maestro, el empleo en el municipio en que se obtuvo el *status* permanente, sujeto desde luego a suspensión, o

---

([3])La sección 4 de la Ley núm. 312 lee como sigue:

"Las renuncias, licencias sin sueldo, los traslados y ascensos de los maestros permanentes se regirán por los reglamentos que al efecto promulgue el Comisionado de Instrucción."

([4])El artículo 17 del Acta Orgánica (48 U.S.C. §783) dispone que:

"El Comisionado de Instrucción dirigirá la instrucción pública en toda la Isla; todo desembolso propuesto por cuenta de la misma deberá ser aprobado por él, y preparará todos los cursos de estudio, con sujeción a la desaprobación del Gobernador si este deseare intervenir. Preparará reglamentos para la selección de maestros, y los nombramientos de maestros por las juntas escolares estarán sujetos a su aprobación, y desempeñará los demás deberes, no incompatibles con esta Ley, que se le asignaren por ley."

destitución por las razones y en la forma expuestas en la sección 5 de la Ley núm. 312. En *Dutart* v. *Woodward,* 279 Pac. 493, 4 (Cal., 1929) la corte, al interpretar un estatuto similar, dijo que "La Legislatura ha conferido a los maestros, bajo ciertas circunstancias, un derecho adquirido a ser así clasificados y a enseñar como maestros permanentes, *en el distrito específico en que se obtuviere este derecho,* sujeto a tales reglas razonables que puedan ser adoptadas, que no estén en conflicto con la ley". (Bastardillas nuestras). Al mismo efecto, *Abraham* v. *Sims,* 42 P. (2d) 1029 (Cal., 1935); *Kacsur* v. *Board of Trustees, etc.,* 116 P. (2d) 593 (Cal. 1941).

Sin embargo, el Procurador General alega que el Comisionado estaba autorizado a hacer el traslado aquí envuelto en virtud de la sección 1 del Reglamento sobre Traslados de Maestros, promulgado por el Comisionado en 1 de julio de 1942.([5])

Antes de examinar tal cuestión, creemos necesario considerar dos problemas preliminares. Un reglamento anterior, fechado en 22 de diciembre de 1941, citado por el peticionario, disponía un método por el cual un maestro en un municipio podía, con la aprobación del Comisionado, permutar su plaza con un maestro de otro municipio. No necesitamos decidir en este caso si tal reglamento anterior ejercitó hasta el límite el poder conferido al Comisionado por la sección 4 de la Ley núm. 312 para promulgar reglamentos para el traslado de maestros. En su consecuencia, expresamente dejamos pendiente la importante cuestión de si el Comisionado puede bajo la sección 4 promulgar en el futuro reglamentos para el traslado de maestros debido a la clausura de

---

(5)La sección 1 de dicho reglamento lee como sigue:

"Cualquier maestro en ejercicio en las escuelas públicas, en virtud de nombramiento permanente, probatorio o de otro carácter, sea cual fuere su categoría o rango, podrá ser trasladado de la escuela que desempeñe o del municipio en que ejerza, a una plaza de igual categoría en otra escuela o en otro municipio en que sus servicios sean más necesarios o útiles para los fines de la enseñanza, o cuando por cualquier otro motivo las necesidades del sistema escolar así lo exigieren."

escuelas o porque los cursos han sido reducidos debido a cambios en la población, o por razones similares. Si el Comisionado promulgara reglamentos detallados que cubran clases específicas de situaciones, entonces estaríamos llamados a determinar si tales reglamentos violaban en un caso determinado el derecho adquirido de un maestro mediante un contrato de empleo bajo las secciones 1 y 2 de la Ley núm. 312. (Véanse *State* v. *Board of Education of City of Duluth,* 7 N. W. (2d) 544, 57 (Minn., 1942); *Miller* v. *Stoudnour,* 26 A. (2d) 113 (Pa., 1942); *State* v. *Meigs County Board of Education,* 44 N. E. (2d) 455 (Ohio, 1942); *Downs* v. *Board of Education of Hoboken Dist.,* 171 Atl. 528 (N. J., 1934)). Dejamos tales problemas para el futuro.

▉ Tampoco nos impresiona el argumento del Procurador General, que no fué adoptado por la corte de distrito, de que la excepción previa fué declarada con lugar correctamente porque la petición no usa específicamente la palabra arbitraria para calificar la actuación del Comisionado. González tenía en derecho *prima facie,* de acuerdo con las alegaciones de su petición y de conformidad con las secciones 1 y 2 de la Ley núm. 312, a una plaza permanente en Lares. Su petición transcribe literalmente una carta del Comisionado la cual, sin exponer razón alguna para ello, traslada sumariamente al peticionario a otro municipio. Resolvemos que al exponer tales hechos en la petición bajo las circunstancias de este caso se aduce suficientemente una causa de acción, que exige que el Comisionado conteste mediante negación o defensa afirmativa, y que de interponerse una excepción previa, nos obligue a determinar si, como cuestión de derecho, la facultad del Comisionado a hacer tal traslado es absoluta.

▉ Pasamos por tanto a la cuestión verdadera con que nos confrontamos en este caso; es decir, si el Comisionado tiene poder ilimitado para trasladar maestros permanentes de un municipio a otro. La sección 1 del Reglamento de 1 de julio de 1942 indudablemente tiene el fin de otorgar tal poder al Comisionado. Por tanto el peticionario afirma que

tal Reglamento no debe subsistir toda vez que viola el derecho adquirido de enseñar permanentemente en Lares que ha adquirido bajo las secciones 1 y 2 de la Ley núm. 312. Obviamente, el Procurador General no alega que un reglamento promulgado para implementar un estatuto puede contener disposiciones que estén en conflicto con los términos del propio estatuto. Sin embargo, el Procurador General insiste que el reglamento que otorga al Comisionado discreción sin restricciones para trasladar un maestro de un municipio a otro puede ser armonizado con el derecho adquirido de enseñar permanentemente en un municipio determinado, obtenido por el maestro bajo la Ley núm. 312. Repetimos que no está envuelta en este caso la cuestión de proveer mediante un reglamento apropiado el traslado de un maestro por ciertas razones específicas. Pero no podemos seguir el argumento del Procurador General de que al disponerse mediante reglamento, bajo la Ley núm. 312, que el Comisionado de Instrucción puede trasladar un maestro *sin exponer razón alguna para ello,* no menoscaba el derecho adquirido del incumbente a enseñar permanentemente en dicho municipio que le confiere dicha ley. Si nos referimos únicamente a la sección 4 de la Ley núm. 312 en busca de autoridad para promulgar este reglamento, debemos concluir que es nula a ese fin toda vez que está en evidente conflicto con el derecho adquirido antes mencionado.

Aparentemente la corte de distrito estuvo de acuerdo con nuestra conclusión a este respecto. No declaró el reglamento como correcto bajo la sección 4, y como consistente con las secciones 1 y 2 de la Ley núm. 312. Desestimó la petición bajo una teoría enteramente diferente. La corte inferior resolvió que el poder ilimitado de selección conferido al Comisionado a virtud del artículo 17 del Acta Orgánica comprende el poder de traslado, y que toda vez que la Ley núm. 312 intenta restringir este derecho de selección, que incluye el poder de traslado, la Ley núm. 312 es nula. En síntesis, la corte de distrito concluyó que el reglamento era meramente

una reexposición de la alegada autoridad incontrolable del Comisionado, emanante del artículo 17 del Acta Orgánica, para hacer traslados arbitrarios, y que el reglamento ni añadió ni disminuyó dicha autoridad. Confirmar la sentencia de la corte de distrito bajo ese principio tan amplio, tendría repercusiones notables en el sistema educativo de Puerto Rico y en la permanencia de maestros después que han sido seleccionados y nombrados para plazas permanentes.

Para llegar a esta conclusión, la corte de distrito descansó en parte en tres casos de esta corte. Pero todos esos casos surgieron con anterioridad a la aprobación de la Ley núm. 312, y en ninguno de ellos estaba envuelta la cuestión del traslado. En *Urdaz v. Padín, Comisionado,* 48 D.P.R. 306, estaba envuelta la aprobación por el Comisionado del nombramiento de un maestro hecho por un director escolar. Este caso se regía claramente por la disposición contenida en el artículo 17 del Acta Orgánica al efecto de que el Comisionado "preparará reglamentos para la selección de maestros, y los nombramientos de maestros por las juntas escolares estarán sujetos a su aprobación . . .". El caso de *Martínez v. Huyke, Comisionado,* 41 D.P.R. 288, era similar, excepto que envolvía la aprobación por el Comisionado de un nombramiento hecho por una junta escolar. El de *Rodríguez Carlo v. García Ramírez,* 35 D.P.R. 381, envolvía un propuesto desembolso para instrucción pública. El Artículo 17 del Acta Orgánica expresamente dispone que "todo desembolso propuesto . . . deberá ser aprobado" por el Comisionado. Las opiniones en estos tres casos son cortas, y llegan a conclusiones y emplean un lenguaje sobre los cuales no puede haber disputa legítima.

Pero no convenimos con la corte de distrito en que dichos casos y el artículo 17 del Acta Orgánica nos obligan a resolver que la Ley núm. 312 aprobada posteriormente es nula. Dicha ley en manera alguna usurpa la función del Comisionado contenida en el Acta Orgánica de que "El Comisionado . . . preparará reglamentos para la selección de maestros, y

los nombramientos de maestros por las juntas escolares estarán sujetos a su aprobación . . . ''. El Comisionado no levanta tal contención aquí, ni pensó en esa forma cuando se aprobó el estatuto en cuestión. En verdad, en su Informe Anual, correspondiente al año 1937–38, dice a la página 13 que ''La Asamblea Legislativa de 1938 aprobó varias leyes impulsadas por el Departamento de Instrucción para tener efecto durante el año 1938–39. Ellas son: . . . 4. Ley núm. 312—1938 que autoriza al Comisionado de Instrucción a extender nombramientos permanentes a todos los maestros de instrucción pública que hayan prestado servicios satisfactoriamente durante un período probatorio prescrito por ley. (Esta Ley no es aplicable a maestros especiales.) . . . ''.

La Ley núm. 312 cuidadosamente reserva al Comisionado el poder de selección final que le otorga el Acta Orgánica. La sección 1, después de disponer en cuanto a períodos probatorios para los maestros, dice que ''una licencia vitalicia . . . . se expedirá al término del período probatorio a los maestros que a juicio del Departamento de Instrucción hayan demostrado suficiente capacidad profesional . . . ''. La sección 2 tiene una disposición similar en cuanto a maestros que al aprobarse la ley hubieran ya prestado servicios durante un período probatorio suficiente. Dispone que tal maestro ''tendrá derecho a contrato permanente . . . si a juicio del Departamento de Instrucción fuere evidente que dicho maestro ha completado satisfactoriamente su período probatorio''.

En dos palabras, esta ley, impulsada por el propio Comisionado, proporciona a éste la maquinaria que le permite nombrar a un maestro potencial durante un período probatorio para juzgar su capacidad antes de ejercer su discreción en cuanto a la selección final para su nombramiento permanente otorgádole exclusivamente por el Acta Orgánica. La Ley núm. 312 está basada en las Leyes de Permanencia para Maestros que se encuentran en una abrumadora mayoría de los Estados. Sus propósitos son establecer la selec-

ción de maestros de escuelas sobre una base científica, imparcial, y conseguir personal de alta capacidad asegurándoles un empleo permanente. Sus disposiciones relevan al poder nominador de la presión política o de otra índole a favor de candidatos específicos. Pero la selección final, según lo dispone el Acta Orgánica, siempre permanece en las manos del Comisionado de Instrucción.

En vista de los argumentos expuestos por las partes en este caso, notamos que la disposición del artículo 17 del Acta Orgánica en cuanto a que el Comisionado "dirigirá la instrucción pública" no le otorga poderes específicos algunos que de otro modo no tendría. El poder y el derecho a dirigir la instrucción pública, aun en ausencia de la cláusula declaratoria y directiva arriba indicada, es inherente al cargo de Comisionado de Instrucción. Pero un amplio poder ejecutivo de tal naturaleza no maniata completamente a la Legislatura. Como se indica en el alegato del peticionario, existe un número de Estados que, como Puerto Rico, han aprobado leyes de permanencia para maestros disponiendo empleo permanente, a pesar de la disposición constitucional estableciendo el puesto de un Comisionado que dirigirá la instrucción pública. Corwin dispone de una contención similar en relación con un jefe ejecutivo, como sigue: "Un caso sobresaliente (*leading case*) y frecuentemente citado es el de *Field* v. *People*, 2 Scam 79 (Ill., 1839). Refiriéndose al deber del Gobernador de 'ver que las leyes se pongan en vigor fielmente', la corte dice en este caso (pág. 91): 'Esta cláusula de la Constitución, como aquellas que dividen los poderes del Gobierno, y que establecen sus atributos, es la declaración de un principio general, que "no se le tendrá como una regla para limitar y controlar sino como cuestión meramente declaratoria y directiva." No confiere poderes determinados "ni tampoco prescribe ningún deber específico." "Este poder de dirección general," dice un hábil comentarista sobre derecho Americano, "es un deber conferido a los ejecutivos federal y estatales." "Sería peligroso, sin em-

bargo, tratar esta cláusula como que confiere poder específico alguno que ellos de otro modo no tendrían. Debe tenerse como descripción comprensiva del deber del ejecutivo de vigilar cuidadosamente todos los intereses públicos,'' ' citando Walker, *Introduction to American Law*, 103.'' (Nota al margen, *Corwin's Tenure of Office and the Removal Power under the Constitution*, 27 Col. L. Rev. 353, 389). *Cf. Jiménez* v. *Reily*, 30 D.P.R. 626, 629, 732; *González* v. *Corte de Distrito*, resuelto en 2 de junio de 1943 (ante, pág. 160.)

En verdad, el Congreso sabía que si deseaba otorgarle al Comisionado poderes específicos que no estuvieran sujetos a modificación por la Legislatura Insular, debía incluir disposición en detalle para ello en el Acta Orgánica. Como hemos visto, esto se hizo en el artículo 17 del Acta Orgánica, en cuanto a selección de maestros y en cuanto a los desembolsos.

La corte de distrito no cometió error en cuanto a este punto. No encontró que el Comisionado tuviera poder para hacer un traslado arbitrario dentro de la cláusula genérica que le otorga al Comisionado la facultad de dirigir la instrucción pública en todo Puerto Rico. Pero la corte inferior concluyó que la Ley núm. 312 estaba en conflicto con la disposición específica del artículo 17 del Acta Orgánica de que el Comisionado ''Preparará reglamentos para la selección de maestros, y los nombramientos de maestros . . . estarán sujetos a su aprobación . . .''. Sin embargo, como ya se ha indicado, no podemos convenir con tal conclusión. Como se indica por el peticionario en su alegato, '' . . . la ley de permanencia jamás interviene con la facultad de seleccionar ni aún con la de nombrar. El Comisionado establece reglas para la selección de los maestros. Los nombra. Los pone a prueba. Juzga su labor. Determina si tales maestros así seleccionados y nombrados y juzgados realizan o no una labor satisfactoria. Hasta aquí no interviene para nada la Ley de Permanencia. Es cuando después de realizar todas estas cosas y llegar el Comisionado a la conclusión de que tales

maestros han pasado por el período probatorio de dos años con absoluto éxito que comienza a funcionar la Ley de Permanencia, no para intervenir con la autoridad del Comisionado, sino para garantizar al pueblo los servicios de maestros competentes y evitar que puedan ser eliminados caprichosamente con traslados o mediante otras formas.''

Tomando como una premisa, que todos convienen en que es cierta, de que la selección de maestros descansa en el Comisionado, la corte de distrito concluye (1) que la Ley núm. 312 invade el poder de selección del Comisionado y (2) que ''el traslado de un maestro no es otra cosa que su selección para un distrito determinado''. Ya hemos expuesto nuestra conclusión de que la primera proposición de la corte de distrito no está sostenida por los términos de la Ley núm. 312, bajo la cual el Comisionado todavía retiene su poder de selección.

Refiriéndonos a la segunda proposición de la corte inferior, no podemos aceptar su razonamiento de que el traslado forma parte del sistema de selección. Forzando dicho argumento hacia su conclusión lógica, una reducción en grado o una rebaja de sueldo, o aún la destitución, también caerían bajo el poder de selección. Concluímos que el traslado está clasificado más propiamente bajo permanencia (*tenure*). Y cuando examinamos el problema de la permanencia descubrimos el hecho altamente significativo de que cuando el Acta Orgánica fué propuesta originalmente disponía que '' . . . la elección, nombramiento y *permanencia* de los maestros serán determinados por'' el Comisionado de Instrucción. (Bastardillas nuestras.) Por insistencia del Comisionado Residente Muñoz Rivera, la disposición en cuanto a la determinación de permanencia por el Comisionado de Instrucción fué eliminada del proyecto cuando se aprobó finalmente.(⁶) El Con-

---

(⁶)Audiencias ante el Comité sobre Islas del Pacífico y Puerto Rico, Senado de Estados Unidos, Congreso Sesenta y cuatro, Primera Sesión sobre el S. 1217, Ley para Proveer un Gobierno Civil para Puerto Rico, y para otros fines (pág. 78).

greso creyó sabio el disponer que la selección de maestros fuera hecha por el Comisionado con el fin de conservar esta función vital fuera de la política. El Congreso deliberadamente eliminó de la primera redacción del Acta Orgánica una disposición similar dándole al Comisionado control sobre la permanencia de maestros. Afortunadamente, la Legislatura, por recomendación del propio Comisionado, intercaló en la sección 1 de la Ley núm. 312 las barreras contra los traslados arbitrarios. La Legislatura relevó al Comisionado en lo referente a traslados de la misma influencia política que el Congreso tuvo en mente eliminar en cuanto a la selección original de los maestros. Una analogía útil se encuentra en la sección 5 de la Ley núm. 312 que dispone la suspensión o destitución de maestros permanentes "sólo . . . por justa causa, según lo dispuesto . . . mediante procedimiento prescrito por la Ley Escolar Compilada . . .". Nadie alega que el poder de selección de maestros, tal cual lo otorga el Acta Orgánica al Comisionado, supedita esta disposición de ley, y permite al Comisionado destituir o suspender sin justa causa un maestro permanente (Véase *Rosario* v. *Gallardo, Comisionado,* resuelto en 22 de junio de 1943, ante, pág. 266) Así mismo, tampoco hay razón para concluir que el poder de selección permite al Comisionado arbitrariamente despojar a un maestro permanente de una parte importante de su permanencia bajo la Ley núm. 312—el derecho a continuar enseñando en un municipio determinado.

Por tanto la cuestión aquí envuelta se reduce al siguiente razonamiento. El Congreso eligió no otorgar al Comisionado de instrucción poderes específicos en relación con la permanencia de maestros, y del poder general para dirigir la instrucción pública no emana tal poder; el traslado se relaciona con la permanencia y no, como concluyó la corte de distrito, con la selección de un maestro; la permanencia incluye, bajo las secciones 1 y 2 de la Ley núm. 312 y los casos interpretando estatutos similares en otras jurisdicciones, una plaza en un municipio determinado; al disponer la permanencia

de un maestro en un municipio determinado, las secciones 1 y 2 de la Ley núm. 312 son válidas y no están en pugna con los poderes otorgados al Comisionado por el Artículo 17 del Acta Orgánica.

La Ley núm. 312 no es de origen puertorriqueño. Es producto de un modelo que se ha esparcido gradualmente a través de los Estados Unidos. "La Ley de Permanencia para Maestros fué designada para llevar a cabo un propósito laudable. Si se pone en vigor sana e imparcialmente, los que propulsaron su adopción verán coronados sus esfuerzos constantes por los buenos resultados que inevitablemente surgirán. Fué la intención, *inter alia,* proteger a los buenos maestros de la juventud de una comunidad de someterse compulsoriamente a las influencias políticas de aquéllos que tienen el poder de otorgar o retirarles el nombramiento; y de asegurarles empleo a tales maestros, después de un largo período de servicios satisfactorios para el público, prescindiendo de los vaivenes de la política o las preferencias de aquéllos que tienen en sus manos la administración de asuntos escolares." (*Andrews* v. *Union Parish School Board,* 184 So. 574, 578 (La., 1938).) Se ha resuelto repetidamente que la Ley de Permanencia para Maestros fué aprobada, entre otros propósitos, para proteger a los maestros y por ende que tal Ley "debe interpretarse siempre liberalmente a favor de aquéllos en cuya protección fué aprobada." *Kennington et al.* v. *Red River Parish School Board,* 200 So. 514, 16 (La., 1940). Para una excelente opinión que relata la historia del desarrollo de tal estatuto y sus propósitos, véase *Mc Sherry* v. *City of St. Paul,* 277 N. W. 541 (Minn., 1938). Véase también 127 A.L.R. 1298; 103 A.L.R. 1382.

Habiendo llegado a la conclusión que bajo la sección 1 de la Ley núm. 312 la permanencia en un municipio determinado es uno de los beneficios del empleo, resolvemos que bajo su contrato de empleo el peticionario tiene un derecho adquirido para enseñar permanentemente en Lares que no

puede ser terminado arbitrariamente. (*Indiana ex rel. Anderson* v. *Brand,* 303 U. S. 95; *cf. Rivera* v. *Tugwell, Gobernador,* 59 D.P.R. 841.)

Aunque la sentencia en este caso se dictó por resolución de la corte de distrito declarando con lugar la excepción previa interpuesta contra la petición de mandamus, las partes están contestes en cuanto a los hechos. Estando controlado el caso por nuestra decisión sobre la única cuestión de derecho envuelta, no traería resultado práctico alguno el que devolviésemos el caso para la celebración del juicio sobre una contestación en que se admiten todos los hechos alegados en la petición. *La sentencia de la corte de distrito declarando con lugar la excepción previa interpuesta contra la petición de mandamus será por tanto revocada y se dictará una nueva sentencia concediéndolo.*

El Juez Presidente Sr. Del Toro no intervino.