Víctor R. Fajardo, demandante y peticionario, *v.* Departa-
mento de Instrucción Pública, demandado y recurrido.

*Número:* CE-88-178          *Resuelto:* 29 de junio de 1990

*Héctor Urgell Cuevas,* abogado del peticionario; *Rafael Ortiz Carrión, Procurador General, Norma Cotti Cruz, Subprocuradora General,* y *Nilda P. Fuentes Ortiz, Procuradora General Auxiliar,* abogados del recurrido.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

█ Adjudicamos el derecho, si alguno, que tiene Víctor R. Fajardo —maestro transitorio-elegible del Departamento de Instrucción Pública (D.I.P.)— a una plaza de categoría similar a la que en tal carácter ocupó una vez demostró su capacidad para descargar ese puesto y aprobó el período probatorio de dos años.(1) Veamos.

I

Víctor R. Fajardo, empleado de carrera del D.I.P., ocupó en propiedad una plaza de Superintendente Auxiliar III en el Distrito Escolar de Bayamón hasta el 19 de octubre de 1981. En esta fecha fue nombrado, con carácter de transitorio-elegible, a la plaza Núm. 0098 de Superintendente Escolar IV del Distrito Escolar IV del Municipio de Bayamón. Esta designación se efectuó mediante el procedimiento de selección y reclutamiento de personal docente vigente en aquel momento, el cual requería que los candidatos se sometieran a una cualificación en cuanto a idoneidad y capacidad.(2)

En vista de que para el 31 de marzo de 1985 surgiría una vacante en la plaza Núm. 0095 de Superintendente Escolar IV en

---

(1) El Reglamento de Personal Docente del Departamento de Instrucción Pública Núm. 3083, en su Art. 18, inciso (34), define "maestro transitorio elegible" como "aquél nombrado por un término fijo en una plaza para la cual posee certificado regular de maestro para la categoría correspondiente". Antes de su aprobación, el empleado con nombramiento "transitorio-elegible" era denominado "sustituto". Utilizamos ambos términos indistintamente.

(2) Estos criterios de evaluación, contenidos en el Art. IV del Reglamento sobre Ascensos a Puestos Directivos Locales, Técnicos de Currículo y de Supervisión en el Sistema de Instrucción Pública entonces vigente, son similares a los establecidos en la Sec. 7.2 del Reglamento de Personal Docente del Departamento de Instrucción Pública, vigente en la actualidad.

esa municipalidad, el 25 de marzo Fajardo se comunicó con la entonces Secretaria Awilda Aponte Roque y le solicitó que le asignara permanentemente a esa plaza. En su escrito señaló que había ocupado el puesto de Superintendente, como sustituto, por más de dos años, que la plaza que habría de quedar vacante era de igual categoría a la que ocupaba y que era el Superintendente de Escuelas con mayor antigüedad en dicha categoría sin permanencia en ese municipio.

El 30 de mayo de 1985 el Secretario Interino Ramón Ramos Alvarado denegó esa solicitud. Le informó a Fajardo que la adjudicación de la plaza Núm. 0095 —en virtud de la interpretación que el D.I.P. daba a la decisión del Tribunal Superior, Sala de San Juan, en el caso de *Edilberto Rodríguez v. Departamento de Instrucción Pública*, PE-77-850— le correspondía en primera instancia al incumbente sustituto de dicha plaza.(3) En la alternativa, le indicó que de aplicar lo dispuesto en la Sec. 7.4 del Reglamento de Personal Docente del Departamento de Instrucción Pública, procedería una certificación de candidatos elegibles para cubrir la vacante, por lo que la solicitud era improcedente.

El 12 de junio de 1985, Fajardo fue notificado de su remoción del puesto de Superintendente de Escuelas IV ante el retorno de Ángeles Tirado, a quien pertenecía dicha plaza en propiedad. Por tal razón, efectivo el 1 de julio de 1985, fue reasignado a la plaza que ocupaba anteriormente de Superintendente Auxiliar III.

Posteriormente, el 10 de julio de 1986, mientras Fajardo se encontraba bajo licencia especial sin sueldo desempeñándose como Sub Director del Programa de Desarrollo Comercial del Municipio de Bayamón, nuevamente solicitó a la Secretaria Aponte Roque que se le asignara otra plaza de Superintendente de Escuelas IV que habría de quedar vacante en ese municipio. En esta ocasión, su petición versó sobre la plaza Núm. 0098 —ocupada originalmente por Fajardo de forma consecutiva desde

---

(3) En aquel momento María L. Rubero Rivera ocupaba la plaza Núm. 0095 con carácter transitorio-elegible. Posteriormente, ésta fue otorgada con carácter permanente a Rubero Rivera.

el 19 de octubre de 1981 hasta el 30 de junio de 1985 en el Distrito Escolar IV de Bayamón— que quedaría vacante el 8 de agosto de 1986, debido a la jubilación de su incumbente en propiedad.

La Secretaria Auxiliar de Personal, Zayda M. Robles de Delgado, le informó que esa plaza habría de cubrirse mediante el procedimiento de certificación de elegibles. Ello a pesar de que esta notificación estaba fechada el 3 de septiembre de 1986, y con anterioridad —29 de julio de 1986— esta misma persona, Robles de Delgado, había *solicitado y autorizado* la reclasificación de dicha plaza (Núm. 0098) a una posición de Superintendente de Escuelas III. Esta reclasificación fue aprobada finalmente el 1 de agosto de 1986 por Rubén Rojas Marrero, Director de la División de Clasificación y Retribución del D.I.P.

Así las cosas, el 1ro de julio de 1985 Fajardo apeló a la Junta de Apelaciones del Sistema de Administración de Personal (J.A.S.A.P.). Impugnó la negativa del D.I.P. a que se le nombrase con carácter *permanente* en una plaza de Superintendente Escolar IV en el Distrito Escolar de Bayamón. En esencia, alegó que ello le privaba de su derecho —como empleado de carrera— a ascender dentro del sistema del D.I.P.

Luego de diversos trámites, el Oficial Examinador rindió a J.A.S.A.P. el informe correspondiente. Recomendó que se reconociese el derecho de Fajardo a un puesto de Superintendente Escolar IV. J.A.S.A.P. rechazó el mismo y declaró sin lugar la apelación. Inconforme, Fajardo recurrió al Tribunal Superior, Sala de Bayamón (Hon. Bárbara M. Sanfiorenzo, Juez), el cual oportunamente declaró no ha lugar el recurso.

A solicitud de Fajardo, acordamos revisar y examinar los señalamientos siguientes:

1. Erró la Junta de Apelaciones del Sistema de Administración de Personal ya que teniendo ante s[í] el reclamo de un maestro sustituto, en vez de aplicar a la controversia la [L]ey de Permanencia determinó, erróneamente, que éstos son empleados transitorios sin derecho a la permanencia a pesar que desde 1938 estos maestros sustitutos poseen legítimo derecho a la permanencia. El Honorable Tribunal incidió gravemente al rehusar expedir auto para enjuiciar la juri[dici]dad de la decisión.

2. Erró el Honorable Organismo recurrido al no exponer ni adjudicar la conducta ambigua y contradictoria de la agencia que, ante una misma situación, confiere derechos de permanencia a un empleado como maestro sustituto pero los niega al recurrido aduciendo que entonces cumple con el Principio d[e] Mérito cuando el recurrente había ya aprobado su período probatorio y tenía la mayor antig[ü]edad, lo cual, de acuerdo a las normas vigentes configuró su derecho.

La negativa del Honorable Tribunal de instancia a revisar este atropello constituyó un fracaso de la justicia.

## II

La controversia que plantean ambos señalamientos se reduce a determinar si, a la luz de las disposiciones de la Ley de Permanencia de los Maestros y del Reglamento de Personal Docente del Departamento de Instrucción Pública, Fajardo tenía derecho a que se le otorgase —con carácter permanente— una plaza vacante de Superintendente Auxiliar IV en el Municipio de Bayamón.(4) Acometamos esa tarea.

■ La Ley de Permanencia de los maestros fue aprobada para establecer la selección de maestros de escuelas "sobre una base científica, imparcial y [para] conseguir personal de alta capacidad, asegurándoles un empleo permanente". *González v. Gallardo, Comisionado*, 62 D.P.R. 275, 284 (1943). "Fué la intención, *inter alia*, proteger a los buenos maestros . . . de [tener que] someterse compulsoriamente a las influencias políticas de aquéllos que tienen el poder de otorgar o retirarles el nombramiento; y de asegurarles empleo a tales maestros, después de un largo período de servicios satisfactorios . . ., prescindiendo de los vaivenes de la política o las preferencias de aquéllos que tienen en

---

(4) A pesar de que Fajardo fue ascendido con carácter de sustituto a la plaza de Superintendente Escolar IV bajo la vigencia del antiguo Reglamento sobre Ascensos a Puestos Directivos Locales, Técnicos de Currículo y de Supervisión en el Sistema de Instrucción Pública, para nuestra decisión —dada la similitud de ambos cuerpos reglamentarios en lo relativo al procedimiento de selección de candidatos— tomamos como referencia las disposiciones que componen el Art. 7 del reglamento vigente.

sus manos la administración de asuntos escolares." *Andrews v. Union Parish School Board*, 184 So. 574, 578 (La. 1938), citado en *González v. Gallardo, Comisionado*, supra, pág. 288. Por tal razón, sus disposiciones, junto con las del Reglamento de Personal Docente del Departamento de Instrucción Pública, deben interpretarse liberalmente en favor de aquellos para cuya protección fue aprobada y para salvaguardar los intereses públicos perseguidos.

Al presente, la Ley de Permanencia, en su Sec. 1, establece:

> Todo maestro en servicio activo en las escuelas públicas, mediante nombramiento hecho de conformidad con la Ley Escolar, los reglamentos del Departamento de Instrucción Pública y los reglamentos de la Junta Estatal de Instrucción Vocacional, Técnica y de Altas Destrezas, y que haya ejercido como tal en cualquier categoría de escuela durante el período probatorio que se especifica más adelante, tendrá derecho a ser contratado con carácter permanente en la categoría correspondiente en que esté ejerciendo al expirar dicho período probatorio sin otras pruebas de calificación o capacidad profesional que la posesión de una licencia regular de la misma categoría del puesto que ocupa el maestro y haber realizado, a juicio del Departamento de Instrucción Pública, labor satisfactoria. Para los efectos de las secs. 214 a 218 de este título, no se tomará en consideración el tiempo que los maestros ejerzan en calidad de provisionales. Tales maestros tendrán derecho a ser contratados con carácter permanente en el municipio en que están ejerciendo al expirar el período probatorio. El tiempo trabajado por los maestros con certificado regular en calidad de sustituto y que hayan realizado labor satisfactoria en puestos de la misma categoría se convalidará como período probatorio. La equivalencia de los dos (2) años de período probatorio comprenderá el trabajo realizado con contrato sustituto o probatorio durante dos (2) años consecutivos. Tales maestros tendrán derecho a ser contratados con carácter probatorio o permanente en el municipio donde estén trabajando cuando les corresponda una plaza en propiedad. 18 L.P.R.A. sec. 214.

El propósito claro de este estatuto es "establecer que el maestro que sea contratado como sustituto [(transitorio-elegible)] se le convalidará el período trabajado como tal para los efectos de concederle la permanencia si surge una plaza regular en el distrito

escolar en que esté trabajando y si le correspondiese la misma". Alcance de la Medida, Ley Núm. 77 de 30 de mayo de 1970, enmendatoria de la Ley de Permanencia, 24 Diario de Sesiones de la Asamblea Legislativa (Cámara), Parte 1, pág. 1386 (1970). Esta medida diáfanamente reconoce "que el tiempo trabajado por los maestros con certificado regular en calidad de sustituto o provisional se *convalidará como un período probatorio*, siempre y cuando haya ejercido como tal durante dos (2) años consecutivos". (Énfasis suplido.) Alcance de la Medida, Ley Núm. 7 de 19 de marzo de 1971, enmendatoria de la Ley de Permanencia, 25 Diario de Sesiones de la Asamblea Legislativa (Cámara), Parte 1, pág. 429 (1971).

■ Sin embargo, cabe dejar sentado que el maestro sustituto —que ha cumplido por lo menos dos años consecutivos de labor satisfactoria en el puesto— *no adquiere automáticamente un derecho a permanencia en la categoría de puesto objeto de la sustitución* ni aun una expectativa de retención en la misma plaza que ocupa. Como maestro sustituto, su derecho está *supeditado a que surja una vacante en el mismo municipio en que presta servicios y a que le corresponda esa plaza.*

■ Para determinar si una plaza vacante corresponde a un maestro sustituto es necesario recurrir a las disposiciones del Reglamento de Personal Docente del Departamento de Instrucción Pública, específicamente al Art. 7 relativo al reclutamiento y selección de personal directivo, técnico y de supervisión. La selección de personal para cubrir vacantes en las plazas de Superintendente de Escuelas debe ajustarse a los criterios y procedimientos establecidos en el artículo citado. Veamos.

■ Todo aspirante a un puesto directivo, técnico y de supervisión en el D.I.P. competirá para las plazas disponibles, sujeto a los principios del sistema de mérito. El citado reglamento dispone que se habrá de asignar una lista de turnos para cada plaza de acuerdo con la puntuación obtenida por el aspirante al valorizar una serie de criterios. Como criterios, la Sec. 7.2 del Reglamento

de Personal Docente del Departamento de Instrucción Pública consigna: preparación e índice académico, años de servicio, puntuación en examen escrito y calidad de la labor realizada por el aspirante. Posteriormente, de esa certificación de elegibles —contentiva de los nombres de los diez candidatos con la puntuación más alta— será seleccionado el candidato para cubrir la vacante. Sólo en situaciones excepcionales podrá prescindirse de este procedimiento.

■ Una lectura detenida de la Sec. 7.4 del Reglamento de Personal Docente del Departamento de Instrucción Pública —relativa a la selección de candidatos— refleja las dos situaciones en que la plaza vacante podrá ser llenada a través de un procedimiento *distinto* al de certificación de elegibles. La *primera*, cuando la plaza vacante requiere de cualificaciones especiales. En esta situación, puede utilizarse el procedimiento especial de reclutamiento y selección autorizado en la Sec. 7.4(9) de dicho reglamento. Este procedimiento especial atenderá los requisitos mínimos establecidos para la plaza en cuestión con el propósito de asegurar la selección del candidato idóneo y capacitado.

La *segunda* situación visualizada —también a manera de excepción— se presenta cuando se ha agotado la lista de los candidatos *elegibles* para la plaza. En estas circunstancias podrá autorizarse "la certificación de candidatos *transitorios*, cualificados, quienes, al ser ascendidos, desempeñarán sus plazas solamente por el período restante del año escolar en que haya surgido la vacante". (Énfasis suplido.) Sec. 7.4(4) del Reglamento de Personal Docente del Departamento de Instrucción Pública. Alternativamente, puede recurrirse al procedimiento especial de reclutamiento y selección conforme a la Sec. 7.4(9) de este reglamento.

■ Para entender cabalmente la dinámica que proyectan estas disposiciones reglamentarias, es necesario destacar que el candidato *transitorio* a que se refiere la Sec. 7.4(4) del Reglamento de Personal Docente del Departamento de Instrucción Pública no es el conocido como *transitorio-elegible* o *sustituto*.

Esta sección trata sobre el maestro *transitorio-provisional,* que *no posee certificado regular de maestro* para la plaza vacante en cuestión. *La distinción, más que de nomenclatura, es sustantiva.* El candidato que posee certificado regular de maestro para la categoría correspondiente se le califica como transitorio-elegible y está capacitado para ocupar la plaza vacante en cuestión. Como tal, es acreedor a figurar en el registro de candidatos elegibles y, por ende, le aplica el proceso de selección competitivo antes detallado.(5)

La capacidad y preparación del maestro transitorio elegible fue claramente reconocida por la Legislatura cuando al enmendar en 1970 la Ley de Permanencia de los maestros recalcó que:

La distinción entre un maestro probatorio y un sustituto o [transitorio-]provisional no estriba en su preparación académica ni en su experiencia. *Depende* de que la plaza que ocupe el maestro sustituto o [transitorio-]provisional en su distrito escolar o municipio *esté o no gravada con un derecho de permanencia de otro maestro.* (Énfasis suplido.) Alcance de la Medida, Ley Núm. 77 de 30 de mayo de 1970, *supra.*

■ Lo expuesto nos permite esbozar preliminarmente una importante conclusión. Cuando surge una vacante en un distrito escolar *y hay candidatos elegibles* para ocuparla, al candidato seleccionado se le denominará "maestro probatorio" o "maestro transitorio-elegible", dependiendo del hecho de si la plaza vacante pertenece o no a otro en propiedad. Si no pertenece en propiedad a otro maestro, el aspirante pasa a ser maestro probatorio y adquiere el derecho a ocupar esa plaza con carácter permanente una vez se desempeñe satisfactoriamente en ésta durante el período probatorio de dos años consecutivos.

_____

(5) La Sec. 7.4(4) citada es una versión enmendada de la Sec. 2 del Art. V del antiguo Reglamento sobre Ascensos a Puestos Directivos Locales, Técnicos de Currículo y de Supervisión. Ésta, en lo pertinente, establecía lo siguiente:

"De agotarse los candidatos con certificado válido para determinada categoría y clasificación de puestos se autorizará la certificación de candidatos con certificado provisional quienes, en caso de ser motivo de ascenso, desempeñarán sus puestos solamente por el período restante del año escolar en que haya surgido la vacante."

En cambio, de pertenecer en propiedad la plaza vacante a otra persona, al maestro se le denominará como maestro transitorio-elegible. Una vez la ocupe de manera satisfactoria por un término mínimo de dos años consecutivos, adquiere el derecho a ocupar oportunamente una plaza —*de la misma categoría y nivel*— cuando surja una vacante en el municipio en que labora. Esta plaza vacante podrá pertenecer en propiedad a otra persona, en cuya situación la ocupará como transitorio-elegible. De no estar gravada, entonces se le concederá con carácter permanente.

Ante este trasfondo legislativo y reglamentario, no podemos refrendar la tesis del Departamento de Instrucción Pública expositiva de que "[l]o que permite este articulado es el que se le acredite el tiempo trabajado en una plaza [ocupada con *status*] transitorio-elegible o sustituto, como período probatorio siempre que haya sido evaluado satisfactoriamente". Informe del Procurador, pág. 7.

## III

La normativa y dinámica legal reglamentaria en torno a los derechos y prerrogativas de los maestros transitorios-elegibles no dispone del recurso. Queda por resolver si efectivamente se violó el derecho de Fajardo a ocupar la plaza reclamada. Para ello, es menester examinar el rango de los derechos de los maestros transitorios-elegibles una vez aprueben el período probatorio.

Ni la Ley de Permanencia de los maestros, como tampoco el Reglamento de Personal Docente del Departamento de Instrucción Pública proveen nada sobre el particular.

Sin embargo, ese silencio estatutario y reglamentario no es óbice para llenar el vacío a base del principio cardinal de mérito representado por el factor de antigüedad. Al así resolverlo, simplemente aplicamos por analogía un proceso evaluativo existente en el Reglamento de Personal Docente del Departamento de Instrucción Pública para la solución de controversias similares a la presente. A tal efecto, la Sec. 10.4(d) de este reglamento

dispone un orden de prelación mediante el cual se decretarán las cesantías de personal. Las mismas se harán conforme a los criterios siguientes: (1) primero, los empleados menos eficientes; (2) en caso de igualdad de eficiencia, quedará cesante el que lleve menos tiempo en el servicio, y (3) en ausencia de información que permita juzgar los empleados en cuanto a su eficiencia, el factor a considerar será la antigüedad del empleado, quedando cesante la persona de nombramiento más reciente.

Es de justicia que a los maestros transitorios-elegibles que han aprobado el período probatorio se les aplique el criterio de antigüedad en virtud del tiempo en que se han desempeñado como tales en la plaza en cuestión. Mediante esta decisión, damos vigencia a la premisa inmersa en la ley —que considera a unos tan eficientes como los otros— por haber aprobado satisfactoriamente el término probatorio mínimo. Este resultado también está a tono con los preceptos de la Ley de Personal del Servicio Público de Puerto Rico, Ley Núm. 5 de 14 de octubre de 1975 (3 L.P.R.A. sec. 1301 *et seq.*), a los cuales ha de ajustarse el Reglamento de Personal Docente del Departamento de Instrucción Pública. Esta ley "estimula la utilización de criterios de antigüedad y experiencia en los traslados y ascensos de empleados y faculta al administrador de cada agencia para aplicar estos criterios en determinados puestos". *Laboy v. E.L.A.*, 115 D.P.R. 190, 194 (1984). La Carta Circular Núm. 36-76-77 del D.I.P. de 17 de junio de 1977 confirma este enfoque al disponer que "[l]os candidatos a traslados o descensos competirán para los puestos permanentes con aquellos incumbentes que ocupan plazas de igual categoría y clasificación con carácter *sustituto* en el distrito, región o área en que ocurre la *vacante a base de antigüedad en el cargo*". (Énfasis suplido.)

En resumen, en atención a los principios cardinales del sistema de mérito, concluimos que es de aplicación el factor de antigüedad en la adjudicación de las plazas que advengan vacantes en los respectivos municipios, ante reclamos de maestros transitorios-elegibles que han aprobado en el mismo el período

probatorio. Primero en tiempo, primero en derecho. Una vez un maestro ha adquirido ese derecho, se le reconocerá dando preferencia al rango por antigüedad. Aclaramos, no obstante, que nuestros pronunciamientos no prejuzgan aquellas instancias en que el maestro transitorio-elegible —que aún no ha cumplido con el período probatorio— compita junto con nuevos candidatos seleccionados de la lista de elegibles para una plaza que está vacante permanentemente o es de nueva creación.

## IV

Trazadas así las coordenadas del derecho estatutario, reglamentario y administrativo aplicable, analicemos la situación del peticionario Fajardo. Los hechos *estipulados* por las partes nos presenta un caso claro de violación a sus derechos.

El 19 de octubre de 1981 Fajardo fue nombrado como maestro sustituto o transitorio-elegible en la plaza Núm. 0098 de Superintendente de Escuelas IV del Distrito Escolar IV del Municipio de Bayamón. *En esa ocasión se sometió a un proceso competitivo de reclutamiento y selección, y cumplió con todos los requisitos sustantivos y procesales que se le requirió.*(6) Como resultado, vino a ocupar legítimamente tal puesto. Su capacidad e idoneidad no está en controversia. De hecho, se desempeñó en esa plaza por cerca de cuatro (4) años consecutivos. *Como tal, se convirtió en el*

---

(6) A través de su largo recorrido apelativo, en todo momento Fajardo ha sostenido que dentro del procedimiento en que fue seleccionado como maestro transitorio-elegible estuvo sujeto a requisitos tales como: "(a) Poseer estudios requeridos, en su caso Maestría de Administración y Supervisión Escolar; (b) Experiencia previa de 2 años o más en posiciones de administración y supervisión escolar; (c) Poseer el certificado correspondiente a superintendente expedido por el Secretario de Instrucción; (d) Tomar el examen competitivo ofrecido periódicamente a todos los interesados y cualificados para las plazas de Superintendentes que surjan, bien en carácter de permanente o sustituto; (e) Ser inclu[i]do en el registro de elegibles correspondientes; (f) Ser cer[t]ificado dentro de un número de candidatos para una plaza disponible, según el turno que le correspondiese en el registro de elegibles; (g) Acudir junto con los otros candidatos y someterse para entrevista y evaluación; (h) Ser recomendado para ocupar la plaza por los entrevistadores y evaluadores[, y en último término] (i) Ser nombrado por la autoridad nominadora, el Secretario de Instrucción Pública." Petición de *certiorari*, pág. 2.

En su exposición de los hechos ante J.A.S.A.P. y el Tribunal Superior, el D.I.P. admitió que Fajardo cumplió con todos los requisitos para ser nombrado como maestro transitorio-elegible a la plaza Núm. 0098.

*maestro transitorio-elegible de mayor antigüedad en una plaza de Superintendente IV en Bayamón.*

Resolvemos que Fajardo, *por ser el empleado transitorio-elegible de mayor antigüedad que ocupaba la plaza de Superintendente Escolar IV en el Municipio de Bayamón,* tenía derecho a ocupar permanentemente la plaza Núm. 0095 que quedó vacante el 31 de marzo de 1985, por razón de más antigüedad sobre la maestra Rubero Rivera.

La pretensión del D.I.P. de que Fajardo tenía que someterse nuevamente a los rigurosos procedimientos competitivos de reclutamiento y selección es insostenible. Daría al traste con toda la intención legislativa. De prevalecer esa contención, la totalidad de la experiencia adquirida por un maestro —así como la validez del proceso objetivo mediante el cual obtuvo el carácter de transitorio-elegible para un puesto de la categoría de Superintendente Escolar IV— sería fútil y carecería de importancia y significación práctica. No es posible sostener que el cumplimiento por un maestro de todos los requisitos de ley y reglamentos son elementos carentes de valor a la hora de decidir la permanencia en el municipio donde se ha desempeñado. Menos concluir que el D.I.P. pueda libremente disponer de los puestos vacantes, sin considerar los derechos de los maestros transitorios-elegibles cualificados para desempeñarse en esas plazas.

Nos hacemos eco del razonamiento del Oficial Investigador de J.A.S.A.P. que en su informe consignó que, "de prevalecer dicha alegación, la totalidad de la experiencia adquirida por el empleado, así como la validez del proceso mediante el cual obtuvo el carácter de empleado transitorio[-]elegible para puestos comprendidos en la clase de Superintendente de Escuelas IV, quedaría no sólo en entredicho, sino como una actuación oficial fútil e inoficiosa". *Exhibit* I, pág. 5. A esas expresiones debemos añadir que la postura del D.I.P. se prestaría a que en el procedimiento de reclutamiento y selección de personal docente se usaran criterios ajenos a la idoneidad y capacidad de los aspirantes.

■ Si aspiramos a mejorar la calidad de la enseñanza pública, debemos darle plena virtualidad a la Ley de Permanencia

de los maestros. Ésta confiere a los maestros transitorios-elegibles —que hayan cumplido con el período probatorio— el derecho a ocupar una plaza de igual categoría que quede vacante en el municipio en que se desempeñan. Por su contemporaneidad, merece que reproduzcamos el pronunciamiento siguiente:

". . . [L]a ley de permanencia jamás interviene con la facultad de seleccionar ni aún con la de nombrar. El Comisionado [(Secretario)] establece reglas para la selección de los maestros. Los nombra. Los pone a prueba. Juzga su labor. Determina si tales maestros así seleccionados y nombrados y juzgados realizan o no una labor satisfactoria. Hasta aquí no interviene para nada la Ley de Permanencia. Es cuando después de realizar todas estas cosas y llegar el [Secretario] a la conclusión de que tales maestros han pasado por el período probatorio de dos años con absoluto éxito *que comienza a funcionar la Ley de Permanencia, no para intervenir con la autoridad del [Secretario], sino para garantizar al pueblo los servicios de maestros competentes y evitar que puedan ser eliminados caprichosamente con traslados o mediante otras formas*". (Énfasis suplido.) *González v. Gallardo, Comisionado*, supra, págs. 285–286.

Por los fundamentos antes expuestos, *se dictará sentencia revocatoria. En consecuencia, se ordenará al D.I.P.: (1) reconocer la permanencia de Víctor R. Fajardo en un puesto de Superintendente Escolar IV en el Municipio de Bayamón retroactivo al 1 de julio de 1985, ya sea la plaza Núm. 0095 u otra de igual categoría y nivel; (2) concederle una suma de dinero equivalente a la diferencia entre el sueldo que hubiese devengado de habérsele reconocido tal derecho, y el devengado en efecto durante el tiempo que haya trabajado en el D.I.P., y (3) cualesquiera otros derechos que por razón de esta decisión sea acreedor.*

El Juez Asociado Señor Hernández Denton emitió opinión disidente, a la cual se une la Juez Asociada Señora Naveira de Rodón.

Opinión disidente emitida por el Juez Asociado Señor Hernández Denton, a la cual se une la Juez Asociada Señora Naveira de Rodón.

Por entender que el principio de antigüedad no es de aplicación en la otorgación de permanencias a maestros transitorios-elegibles al amparo de la Ley de Permanencia de maestros, disiento de la opinión suscrita por el Tribunal. Contrario a la decisión mayoritaria, entendemos que el peticionario no tenía derecho a un nombramiento permanente en una plaza de Superintendente Escolar IV que ocupaba la maestra transitoria-elegible Rubero Rivera desde noviembre de 1981. Aunque a primera vista la posición suscrita por el Tribunal pretende darle "plena virtualidad" a la Ley de Permanencia de maestros, su efecto real sería perjudicial al magisterio puertorriqueño. Esta decisión creará gran incertidumbre sobre todos los maestros que por años han ocupado transitoriamente una plaza, esperando algún día obtener la permanencia en la aula donde se han ganado el respeto y la confianza de toda la comunidad escolar.

I

Los hechos estipulados por las partes en la vista celebrada por la Junta de Apelaciones del Sistema de Administración de Personal (J.A.S.A.P.) revelan que el peticionario, el Sr. Víctor R. Fajardo, ocupa una plaza de Superintendente Auxiliar III en el Distrito Escolar de Bayamón III. El 8 de octubre de 1981 fue nombrado como empleado transitorio-elegible a la plaza de Superintendente Escolar IV (Plaza Núm. 0098) para sustituir a la persona que tenía un nombramiento permanente en esa posición administrativa. El peticionario desempeñó su cargo hasta que la incumbente en propiedad fue reinstalada a la posición el 1ro de julio de 1985. En esa fecha regresó a su posición original de Superintendente Auxiliar III. Sin embargo, al poco tiempo Fajardo fue nombrado Sub Director del Programa de Desarrollo Comercial del Municipio de Bayamón y desde entonces tiene una licencia sin sueldo del Departamento de Instrucción Pública.

Antes de concluir su término en la plaza de Superintendente Escolar IV, el peticionario solicitó que se le nombrara con carácter permanente a la plaza Núm. 0095 de igual categoría que iba a estar vacante en otro distrito escolar. Esa plaza era ocupada transitoriamente desde noviembre de 1981 por la profesora Rubero Rivera. En virtud de una decisión del Tribunal Superior en otro caso,[1] y considerando que la maestra había cumplido satisfactoriamente con el período probatorio, el Departamento de Instrucción Pública denegó la solicitud de Fajardo y otorgó permanencia a la profesora Rubero Rivera.

No conforme con esta decisión, el peticionario apeló a J.A.S.A.P. No obstante, mientras se consideraba la apelación, el peticionario solicitó el 10 de julio de 1986 que le otorgaran permanencia en la plaza Núm. 0098 que él había ocupado transitoriamente entre 1981 y 1985, y que quedaría vacante el 8 de agosto de 1986. Oportunamente, el Departamento de Instrucción Pública denegó su petición y le informó que la vacante se cubriría mediante certificación de elegibles. *El peticionario no solicitó una reconsideración de esta decisión ni apeló a J.A.S.A.P.*

Después de celebrar vistas públicas, J.A.S.A.P. emitió la resolución correspondiente mediante la cual denegó la única apelación pendiente del peticionario, referente a la permanencia otorgada a la profesora Rubero Rivera en la plaza Núm. 0095. De esta resolución el peticionario recurrió al Tribunal Superior. Dicho foro se negó a expedir el auto solicitado y, oportunamente, el peticionario acudió ante esta Curia aduciendo que el Departamento de Instrucción Pública cometió error al no aplicar el principio de antigüedad en la otorgación de permanencia para la plaza Núm. 0095 de Superintendente Escolar IV.

## II

La controversia principal del recurso se limita al determinar si el peticionario Fajardo tenía derecho a permanencia en la plaza

---

[1] *Edilberto Rodríguez Battisini v. Departamento de Instrucción Pública*, PE-77-850.

Núm. 0095. Su solicitud requiere que examinemos la validez del nombramiento de la profesora Rubero Rivera a la luz de las disposiciones de la Ley de Permanencia de maestros, Ley Núm. 312 de 15 de mayo de 1938 (18 L.P.R.A. secs. 214–218), y del Reglamento de Personal Docente del Departamento de Instrucción Pública aprobado el 27 de enero de 1984.

La Ley de Permanencia concede al maestro[2] en servicio activo, que se ha desempeñado como tal durante el período probatorio, el derecho a ser contratado con carácter permanente en la categoría correspondiente en que esté ejerciendo al expirar dicho período probatorio. No se requerirá "otras pruebas de calificación o capacidad profesional que la posesión de una licencia regular de la misma categoría del puesto que ocupa y haber realizado, a juicio del Departamento de Instrucción Pública, labor satisfactoria". 18 L.P.R.A. sec. 214. El estatuto y la reglamentación extienden su protección tanto al personal docente en período probatorio como a los sustitutos o transitorios-elegibles.

Aunque la ley tiene el propósito de "establecer la selección de maestros de escuelas sobre una base científica, imparcial, y conseguir personal de alta capacidad . . . la selección final, según lo dispone el Acta Orgánica, siempre permanece en las manos del [Secretario] de Instrucción". *González v. Gallardo, Comisionado*, 62 D.P.R. 275, 283–284 (1943). La ley reserva al Secretario de Instrucción la facultad de otorgar permanencia a los profesores que "a juicio del Departamento" hayan realizado una labor satisfactoria. 18 L.P.R.A. sec. 214.

En el caso de un maestro con un nombramiento probatorio en una plaza de carrera, el Reglamento de Personal Docente del Departamento de Instrucción Pública dispone que "pasará a ocupar una plaza con carácter regular" una vez apruebe satisfactoriamente el período de prueba. En vista de que su nombra-

---

(2) La ley incluye en esta categoría a los "maestros de escuela elemental, maestros de escuela superior, directores de escuela elemental, directores de escuela superior, superintendentes auxiliares de escuelas, superintendentes de escuelas, supervisores generales de instrucción, maestros de agricultura, maestros de artes industriales, maestros de trabajo manual, maestros de ciencias domésticas, maestros de inglés, maestros de asignaturas comerciales y maestros especiales". 18 L.P.R.A. sec. 211.

miento es en una plaza que no tiene un incumbente en propiedad, el maestro probatorio *es acreedor a la permanencia de esa plaza.*

Sin embargo, en el caso de los maestros con carácter transitorio, su nombramiento es por un año escolar o fracción del mismo en aquella plaza ocupada en propiedad por otro instructor que provisionalmente se encuentra realizando otras funciones. Aunque se le convalida el tiempo servido satisfactoriamente, por la naturaleza de su nombramiento, el maestro transitorio-elegible no tiene la misma expectativa de una permanencia que el probatorio. Para ser acreedor a una plaza tiene que surgir una vacante en la plaza que ocupa o en otra análoga en el mismo municipio. Por esta razón, en general cuando el incumbente regresa a la plaza, el transitorio tiene que reintegrarse a su posición original.

Sin embargo, en algunas ocasiones, como en el caso de autos, surge una vacante en una plaza que por más de dos años ha ocupado un maestro transitorio-elegible. En estos casos, y a tenor con la decisión del Tribunal Superior descrita anteriormente,[3] el Departamento de Instrucción Pública *ha reconocido que el maestro transitorio-elegible es acreedor a la permanencia en la plaza que ha ocupado provisionalmente.*

*En vista de que cada escuela tiene unas características peculiares y un estudiantado con distintas necesidades, este método de otorgar permanencia asegura la selección del candidato más idóneo para cada uno de los colegios del sistema.* De lo contrario, se derrotarían los objetivos del estatuto. Ha sido precisamente en esa plaza que la evaluación correspondiente ha demostrado que el maestro ha cumplido con eficiencia y dedicación sus responsabilidades magisteriales. Corresponde al Departamento de Instrucción Pública reconocer su trabajo en esa posición mediante el otorgamiento de permanencia equiparándolo al maestro probatorio. No olvidemos que el ordenamiento dispone que al maestro probatorio se le otorgue la permanencia en la plaza en que ha demostrado su eficacia y no en otra análoga en alguna otra escuela del sistema.

---

[3]  Véase esc. 1.

Debido a la naturaleza de las labores del magisterio, la costumbre siempre ha sido evaluar las competencias del maestro a la luz de los requisitos y necesidades de la plaza. Aunque la ley no dispone sobre estos extremos, ante el vacío estatutario y reglamentario la doctrina civilista nos impone la obligación de resolver conforme a equidad, que quiere decir que se tendrá en cuenta la razón natural, en conformidad con los principios generales del derecho y los *usos y las costumbres aceptadas*. Art. 7 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 7; *Collazo Cartagena v. Hernández Colón*, 103 D.P.R. 870, 874 (1975); *Dalmau v. Hernández Saldaña*, 103 D.P.R. 487, 489 (1975). Aunque en situaciones de vacío estatutario hemos utilizado el principio de interpretación por analogía, *Olmo v. Young & Rubicam of P.R., Inc.*, 110 D.P.R. 740, 743–744 (1981), no es menos cierto que la costumbre es una fuente de derecho, enmarcada dentro del principio de equidad y la cual ha sido ampliamente utilizada en estas situaciones. La costumbre requiere que sea continua, uniforme, racional, estimada y vivida como norma obligatoria. M. Albaladejo, *Comentarios al Código Civil y compilaciones forales*, Jaén, Ed. Rev. Der. Privado, T. I, págs. 48–51. Por último, los peticionarios, que invocan la costumbre como fuente de derecho aplicable por equidad, tienen que acreditarla. *Raval, Inc. v. Maryland Casualty Co.*, 89 D.P.R. 854, 863 (1964); *Pueblo v. Central Cambalache*, 62 D.P.R. 553, 558 (1943); R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1987, págs. 425–435.

*Sin conocimiento de las necesidades del Departamento de Instrucción Pública ni las consecuencias de esta decisión para el complejo sistema educativo, por virtud de un nuevo decreto educativo dictado por esta Curia, hoy se revoca la norma seguida por los educadores durante los pasados doce años. Como resultado de la decisión, un maestro transitorio-elegible que haya desempeñado eficientemente sus tareas por más de dos años no será acreedor a la permanencia en esa plaza si hay otra persona elegible que tenga más antigüedad.*

Conscientes del impacto de esta decisión sobre el sistema de instrucción pública, y *a pesar de la oposición del Departamento de Instrucción Pública a que se deje sin efecto su práctica por los pasados doce años*, la opinión del Tribunal revoca la decisión del Secretario y le concede al peticionario su permanencia "ya sea en la plaza Núm. 0095 u otra de igual categoría y nivel". Así remite al Departamento de Instrucción Pública la difícil tarea de tomar la decisión de remover de su puesto a la profesora Rubero Rivera o a cualquier otra persona que ocupe una posición de "igual categoría y nivel" para conseguir la plaza que necesitan para el peticionario.

Por entender que la decisión es realmente injusta a una maestra que ha ocupado una plaza desde 1981, incompatible con los propósitos y el espíritu de la Ley de Permanencia y contraria a los mejores intereses de la educación puertorriqueña, disiento.